Exhibit 1

**V I R G I N I A:**

### IN THE MONTGOMERY COUNTY CIRCUIT COURT

**ROSS DONALD MUCKEY,**

    **Plaintiff,**

**v.**                                             **Case No. _____**

**ABB, INC.,**

**Serve:**
**CT Corporation System**
**Registered Agent**
**4701 Cox Road, Suite 285**
**Glen Allen, Virginia 23060**

    **Defendant.**

### COMPLAINT

COMES NOW, the Plaintiff, Ross Donald Muckey ("Plaintiff" or "Mr. Muckey"), and brings this action against Defendant ABB, Inc. ("ABB"), seeking the relief set forth below. In support of this Complaint, Plaintiff states the following:

### JURISDICTION & PARTIES

1. This Court has jurisdiction over this matter as it arises from statutory authority, to-wit, Virginia's whistle blower retaliation statute as codified under Va. Code § 40.1-27.3 ("Whistleblower Act").

2. Venue is proper in this Court under Va. Code § 8.01-261.

3. Mr. Muckey is a resident of Montgomery County, Virginia and, at all times relevant, was an employee of ABB.

4. Mr. Muckey had previously been hired over twenty-seven (27) years prior by General Electric. He worked continuously as an engineer until a corporate acquisition led to ABB becoming Mr. Muckey's employer in mid-year 2018.

1

5. ABB's principal office is located in Cary, North Carolina. ABB performs services for customers across the Commonwealth of Virginia.

6. This matter arises out of an employment relationship between the parties. At all times pertinent to this action, ABB was Mr. Muckey' employer.

7. ABB employed Mr. Muckey as a Field Engineer however, this title mischaracterized his work. Mr. Muckey did not venture into the "field" as he worked remotely during the entirety of his employment with ABB.

8. Mr. Muckey worked full-time and received salary and benefits from ABB.

9. Mr. Muckey met all legitimate business expectations of ABB.

10. At no time did ABB ever provide any workplace discipline to Mr. Muckey.

11. At no time did ABB place Mr. Muckey on a performance improvement plan.

12. Mr. Muckey received positive written work performance evaluations from ABB during the entirety of his career.

13. As part of Mr. Muckey's job, he coordinated the schedules of multiple engineers. On many occasions, Mr. Muckey would fill last-minute shifts himself if needed.

14. Both Mr. Muckey and the other engineers worked long hours per week for ABB.

15. Mr. Muckey was paid overtime wages pursuant to the provisions of the Fair Labor Standards Act and Virginia's Overtime Wage Act.

16. The engineers that Mr. Muckey scheduled were paid overtime wages by ABB.

17. During his employment with ABB, Mr. Muckey reported numerous pay concerns in good faith to his supervisors. Mr. Muckey had numerous discussions with his direct supervisor regarding his concerns of employee pay.

18. At all times pertinent to this pleading, Mr. Muckey was concerned that ABB lawfully and honorably pay its overworked Field Engineers.

19. The hours expected by ABB were extreme at times. Engineers were expected to work numerous consecutive sixteen-hour shifts on occasion. Even after working eight-hour or twelve-hour shifts, Engineers were expected to work standby hours.

20. Mr. Muckey observed ABB to pay its Engineers inconsistently. Mr. Muckey attended weekly meetings with his supervisor in which he raised concerns about the pay for coworkers.

21. For every four hours of standby coverage, an Engineer would receive one hour of standby pay in addition to any hours the Engineer actively worked supporting customers.

22. ABB inconsistently paid its engineers. For example, ABB honored overtime or stand by time wages to some engineers, but not all. ABB did not differentiate on the basis of FLSA or state law exemptions. Instead, ABB acted arbitrarily and selectively paid its employees. The effect was disparate pay among co-workers and inaccurate pay to ABB employees in violation of wage and overtime law. Mr. Muckey held good faith concerns that ABB was not paying its engineers all they were owed by ABB and reported this.

23. Mr. Muckey's direct supervisor explained that ABB was inconsistent in its payment methods. As an example, it paid standby pay to Engineers using four different payment methods. From Mr. Muckey's perspective, ABB was not compensating its employees lawfully.

24. Mr. Muckey reported these unlawful issues in good faith his supervisor in management meetings in the fall of 2024.

25. After reporting, Mr. Muckey noticed that ABB had failed to pay him wages for time owed in the fall of 2024. Mr. Muckey reported in good faith that he was owed funds for his time. He reported this nonpayment of wages to management, a report that necessarily concerns violations of state law.

26. Mr. Muckey consistently reported these issues throughout the end of 2024, including December of 2024.

27. Mr. Muckey consistently reported in good faith to his supervisor that ABB needed to lawfully pay its employees the full wage owed for the time worked. Mr. Muckey raised this on a weekly basis through the end of 2024.

28. Less than a month after his most recent report, ABB provided a notice of termination to Mr. Muckey on or about January 17, 2025.

29. No legitimate reason supported the termination of Mr. Muckey.

30. Mr. Muckey's supervisor provided no reason for his termination.

31. Mr. Muckey asked a Human Resources representative for the reason of his termination and was informed that ABB would provide a reason in a few days - - but ABB never provided a formal reason.

32. During his exit interview with his direct supervisor and a representative from Human Resources, Mr. Muckey again asked for the reason of his termination. No official reason was provided although there was a mention of "cost considerations".

33. The work that Mr. Muckey was responsible for performing continued in his absence as ABB replaced Mr. Muckey with an engineer that Mr. Muckey had trained.

34. Mr. Muckey is no lawyer and did not cite sections of the Virginia Code or United States Code when reporting to supervisors. However, Mr. Muckey was clear in his belief and reports that ABB needed to lawfully pay its employees in accordance with the law.

35. ABB understood Mr. Muckey to be reporting issues of illegal pay.

36. The laws upon which Mr. Muckey's reports were based included the following:

    a. The Fair Labor Standards Act

    b. The Virginia Overtime Wage Act

  c. Va. Code § 40.1-29

  d. Va. Code § 40.1-28.10

  e. Va. Code § 18.2-178

  f. Va. Code § 18.2-95

  g. Va. Code § 18.2-23.

37. But for Mr. Muckey's reports that his employer had engaged in unlawful conduct regarding the intentional manipulation worker pay, he would not have been terminated.

38. Mr. Muckey at all times reported in good faith and ABB had notice of his reports prior to retaliating against him.

39. ABB terminated Mr. Muckey in retaliation for his protected reports.

<u>**COUNT I: TERMINATION FROM EMPLOYMENT**</u>
<u>**IN VIOLATION OF VIRGINIA CODE § 40.1-27.3**</u>

40. Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

41. Va. Code § 40.1-27.3 states that "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee "[r]eports a violation of any federal or state law or regulation to a supervisor . . . "

42. Pursuant to Virginia Code § 40.1-2, Mr. Muckey, in consideration of wages, worked directly with ABB. ABB employed Mr. Muckey.

43. Mr. Muckey was an employee of ABB.

44. Retaliation is hereby claimed by Mr. Muckey and imputed to ABB for purposes of liability.

45. The termination of Mr. Muckey' employment violated Va. Code § 40.1-27.3.

46. Claims under the Whistleblower Act require timely initiation of the claim. Mr. Muckey has commenced this litigation within one (1) year of his retaliatory discharge from employment, pursuant to Va. Code § 40.1-27.3.

47. As a direct result and proximate result of the termination of his employment, Mr. Muckey has suffered and will continue to suffer pecuniary losses.

48. Pursuant to Virginia Code § 40.1-27.3, Mr. Muckey is entitled to "(i) an injunction to restrain continued violation of this section, (ii) the reinstatement of [his employment], and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

WHEREFORE, Plaintiff Ross Donald Muckey, demands judgment against Defendant ABB, Inc., for compensation for lost wages, benefits and other remuneration to include backpay, front pay, all with pre and post-judgment interest, as well as reasonable attorneys' fees and costs, in the amount of FIVE MILLION DOLLARS ($5,000,000.00) or such sum as may be shown by the evidence; and for such other and further relief as justice may require.

Trial by jury is demanded on all matters which may be tried including the existence of an enforceable arbitration agreement.

Respectfully submitted,

DAVID ANDREW MUCKEY

By _____
Thomas E. Strelka, Esq. (VSB# 75488)
VIRGINIA EMPLOYMENT LAW
*Counsel for Plaintiff*

VIRGINIA EMPLOYMENT LAW

Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA  24018
Tel:  540-283-0802
thomas@vaemployment.law
leigh@vaemployment.law